IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CV-164-D

| | | |
|---|---|---|
| ROBERT WILLIAM ROGERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DUPLIN LAND DEVELOPMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On August 10, 2011, Robert William Rogerson ("Rogerson" or "plaintiff") filed a complaint alleging that Duplin Land Development, Inc. ("Duplin Land" or "defendant") breached a contract for sale of land, violated the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. §§ 1701–1720, committed fraud, and violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, 75–16 ("UDTPA") [D.E. 1]. Rogerson seeks specific performance, rescission of the sales contract, and damages. Compl. [D.E. 1] 14–15.

On August 15, 2012, defendants moved for summary judgment [D.E. 14] and filed a supporting memorandum [D.E. 15] and exhibits [D.E. 16–18]. On September 25, 2012, plaintiff responded in opposition [D.E. 22] and filed a supporting affidavit [D.E. 21]. As explained below, the court grants defendant's motion for summary judgment.

I.

This court reviews the defendant's motion for summary judgment under the familiar standard of Rule 56. In considering the motion, the court views the evidence in the light most favorable to the plaintiff. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55

(1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 586–87.

The court recites the facts drawn from the pleadings, affidavits, and exhibits in the light most favorable to Rogerson. Rogerson is a South Carolina resident who became interested in purchasing property from Duplin Land in Duplin County, North Carolina. Compl. ¶¶ 1, 8. Rogerson learned of the development ("the Bluffs") in the fall of 2006 through his son, Mac Rogerson, who worked for Duplin Land as a sales agent. Rogerson Aff. [D.E. 21] ¶ 2. At a sales event in November 2006, Rogerson reserved Lot 61B. Compl. ¶ 11. The lot reservation, however, was not a binding contract obligating Rogerson to buy the lot. See Hine Aff. ¶ 12 & ex.3. Moreover, although nobody mentioned environmental issues at the sales event, Duplin Land notified Rogerson several days later that the Bluffs was previously used "as a livestock farming operation" including "a spray field for ... animal waste." Compl. ¶ 14. Duplin Land's representatives also stated that there were no known environmental issues at the time. Compl. ¶¶ 15–17.

In February 2007, Rogerson learned that groundwater in the Bluffs was contaminated with fecal coliform. Rogerson Aff. ¶ 9. In the spring of 2007, Duplin Land provided Rogerson with a Property Report that discussed environmental issues at the Bluffs, including fecal coliform levels in soil, water, and mulch. Compl. ¶ 21; see [D.E. 18] 34. The report stated that the fecal coliform was expected to degrade to a safe level over time. Compl. ¶¶ 21–22; [D.E. 18] 34. No construction

2

would be allowed on the properties until Duplin Land's consultant provided a written report indicating that the fecal coliform had degraded to an acceptable level, which was expected by November 1, 2007. Compl. ¶ 21; [D.E. 18] 34. The report also stated that

> if by November 1, 2007, we as the seller of your lot under your Lot Purchase Contract, have not obtained a written report from our environmental consultant indicating that the previously identified fecal coliform within The Bluffs property has degraded to an acceptable level, then you may terminate the Lot Purchase Contract and receive a full refund of all monies paid, regardless of whether or not the sale has proceeded to closing, or, to the extent available, we will allow such purchasers the right to apply the full purchase price of the lot in the Bluffs to another lot within River Landing.

[D.E. 18] 58.

Notwithstanding the issue of fecal coliform, on or about April 5, 2007, Rogerson executed a contract to purchase Lot 61B. [D.E. 18] 62–66. In accordance with the commitment made in the Property Report, the Lot Purchase Contract contained an addendum ("Addendum B") stating, among other things, that

> Purchaser . . . agrees that no construction activities shall be undertaken on the Lot by Purchaser until The Clark Group, or other qualified consulting firm, undertakes additional sampling at the Property, and the Seller obtains a written report from the consultant indicating that results of that sampling confirm previously identified fecal coliform has degraded to an acceptable level ("Confirmatory Report"). * * * If, the Seller does not receive the Confirmatory Report and notify Purchaser of the same by November 1, 2007, then the Seller and Purchaser will agree to (i) terminate the Contract and return all monies deposited, thereby mutually releasing the Seller and Purchaser from all obligations; or (ii) to the extent available, Seller will allow the Purchaser to apply the full purchase price of the Lot to another lot within River Landing and will pay the same closing costs in such transaction as Seller paid at the closing of the original purchase of the Lot all as shown on the Settlement Statement for the closing on the Lot. This provision shall survive the closing of the transaction contemplated herein.

Mac Rogerson, plaintiff's son, and other unnamed agents of Duplin Land, assured Rogerson that an independent environmental consultant would monitor the fecal coliform levels and that the fecal coliform would degrade quickly. Rogerson Aff. ¶ 10. Without those assurances, and Addendum B's

3

provision that the "Clark Group, or other qualified consulting firm [would] undertake[] additional sampling at the property," Rogerson would not have purchased Lot 61B. Rogerson Aff. ¶¶ 11–12.

In late 2006, Duplin Land retained the Clark Group, an environmental consulting firm, to ensure there was no contamination resulting from the prior agricultural use of the Bluffs. Hine Aff. ¶ 6; see Clark Aff. [D.E. 17] ¶ 4. In a February 2007 report, the Clark Group notified Duplin Land and North Carolina regulators of the fecal coliform contamination. Hine Aff. ¶ 10; Clark Aff. ¶¶ 5–8. Duplin Land then retained the Clark Group to monitor the fecal coliform levels by taking water samples from surface water and monitoring wells. Clark Aff. ¶ 8; Hine Aff. ¶ 11. Duplin Land undertook steps to enhance degradation of the fecal coliform. Hine Aff. ¶ 11. The Clark Group continued taking water samples through May 2007. Clark Group Report [D.E. 18-27] 2. In August 2007, an employee of Murphy Family Ventures, a company related to defendant Duplin Land, also took water samples. Hine Aff. ¶ 11; Clark Group Report 2; Compl. ¶ 36. An independent lab analyzed the water samples and sent the results to the Clark Group. Clark Aff. ¶ 8.

On October 15, 2007, the Clark Group delivered a report to the North Carolina Division of Environment and Natural Resources, Division of Water Quality ("DWQ"), and requested a "no action" letter. Clark Aff. ¶ 9. DWQ examined the report, considered the matter, and responded that "the most recent surface water samples are compliant with established standards and only one monitoring well showed slightly above groundwater standards. The current conditions indicate that no additional monitoring is needed at this time and the matter can be considered closed." [D.E. 18] 68.

On October 31, 2007, in order to provide the notice required by Addendum B, Duplin Land mailed a letter to purchasers of property at the Bluffs stating that Duplin Land had received a "Confirmatory Report," that DWQ considered the matter closed, and that the property at the Bluffs

4

was suitable for construction. See Hine Aff. ¶¶ 20–21. Duplin Land sent such a letter to Rogerson, but Rogerson claims that he never received the letter or any other notice. Id.; Rogerson Aff. ¶ 14. Nearly one year later, on September 5, 2008, and again on October 1, 2008, Rogerson demanded a full refund pursuant to Addendum B, but the defendant did not respond to either demand. Compl. ¶¶ 40–44.

In his complaint, Rogerson alleges that Duplin Land is liable for breach of contract, fraud, unfair and deceptive trade practices, and violations of the ILSFDA. The parties agree that North Carolina law governs the breach of contract, fraud, and UDTPA claims. The court considers each claim seriatim.

II.

A.

Rogerson alleges that Duplin Land's failure to terminate the Lot Purchase Contract and refund all money is a breach of the provisions in Addendum B. Compl. ¶ 48. Duplin Land responds that it did not breach the contract because it provided the notice required by Addendum B, that any delay in the notice was excusable and not a breach, and (in any event) that the contract is an unenforceable "agreement to agree." See Def.'s Mem. Supp. Mot. Summ. J. [D.E. 15] 12–16.

"When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court . . . cannot reject what the parties inserted or insert what the parties elected to omit." Weyerhauser Co. v. Carolina Power & Light Co., 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). "The terms of an unambiguous contract are to be taken and understood in their plain, ordinary, and popular sense." Id. at 719–20, 127 S.E.2d at 541.

Addendum B states, "If, the Seller does not . . . notify Purchaser of the [Confirmatory Report] by November 1, 2007, then" the parties will agree to take further action. The court construes

5

"notify" to mean "provide actual notice to," in light of its plain meaning and the fact that the defendant drafted the provision. See Sanderford v. Duplin Land Dev., Inc., No. 7:10-CV-230-H(2), 2012 WL 506667, at *3 (E.D.N.C. Feb. 15, 2012) (unpublished). Viewing the evidence in the light most favorable to Rogerson, Rogerson did not receive notice by November 1, 2007. Under the terms of the contract, the failure of Duplin Land to timely notify Rogerson is the occurrence of a condition precedent giving rise to the rights afforded under the terms that follow the condition. See Snowden v. Capkov Ventures, Inc., 175 N.C. App. 420, 623 S.E.2d 369, 2006 WL 10923, at *1–2 (2006) (unpublished table decision); Colonial Bldg. Co. v. Justice, 83 N.C. App. 643, 646, 351 S.E.2d 140, 142–43 (1986).

Because the condition occurred, the court next considers the remedy in Addendum B. Duplin Land asserts that the provision in Addendum B following the failure to notify the purchaser is an unenforceable agreement to agree. The court agrees. Under North Carolina law, "the contracting parties must have agreed on all material terms of the contract." Boyce v. McMahan, 285 N.C. 730, 733, 208 S.E.2d 692, 695 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Id. at 734, 208 S.E.2d at 695 (quotation omitted). "[A] contract . . . leaving material portions open for future agreement is nugatory and void for indefiniteness." Id., 208 S.E.2d at 695. "Price, along with identification of the parties and the property to be sold, are the essential elements of a contract." Connor v. Harless, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (quotations omitted) (emphasis removed). An agreement that leaves such terms open to future negotiation or agreement—an "agreement to agree"—is unenforceable because "there is no way by which a court can determine the resulting terms of such future negotiations." Cnty. of Jackson v. Nichols, 175 N.C. App. 196, 199, 623 S.E.2d 277, 279 (2005) (quotation omitted).

6

Addendum B provides that if the purchaser is not notified by November 1, 2007, then

> Seller and Purchaser *will agree to* (i) terminate the Contract and return all monies deposited, thereby mutually releasing the Seller and Purchaser from all obligations; *or* (ii) to the extent available, Seller will allow the Purchaser to apply the full purchase price of the Lot to another lot within River Landing

and the Seller will pay associated costs [D.E. 18] 66 (emphasis added). The language of the contract is clear and unambiguous. The parties agreed that they "will agree" to one of two options. There is no way for the court to determine which of the two options the parties would agree upon or any process by which they would reach an agreement. Moreover, the contract language does not state that the remedy is at the buyer's option. Likewise, nothing in Addendum B indicates how the parties would decide which other lot Rogerson could apply his purchase money toward, nor the price of such a lot. The provision in Addendum B is, by its own terms, an unenforceable agreement to agree. Sanderford, 2012 WL 506667, at *4; see Boyce, 285 N.C. at 734, 208 S.E.2d at 695; Connor, 176 N.C. App. at 405–06, 626 S.E.2d at 757–58; Nichols, 175 N.C. App. at 199–201, 623 S.E.2d at 279–80.

In opposition to this conclusion, Rogerson argues that the terms of Addendum B should be interpreted in conjunction with the Property Report. Pl.'s Mem. Opp. Mot. Summ. J. [D.E. 22] 8–10. Even if the court does so, however, the remedy offered in the Property Report is similarly uncertain and does not assist the court in determining the remedy intended by the parties. See [D.E. 18] 58 ("[Y]ou may terminate the Lot Purchase Contract and receive a full refund of all monies paid . . . or . . . apply the full purchase price of the lot in the Bluffs to another lot . . . ."). Because the refund provision in Addendum B is unenforceable, Duplin Land did not breach the contract, and Duplin Land is awarded summary judgment on the breach of contract claim.

7

B.

Next, the court considers Rogerson's fraud claim. Under North Carolina law, to prove fraud, the plaintiff must show (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does, in fact, deceive; (5) resulting in damages to the plaintiff. Vail v. Vail, 233 N.C. 109, 113, 63 S.E.2d 202, 205 (1951); Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 94–95, 693 S.E.2d 149, 156–57 (2010); Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005) (fraud); Harton v. Harton, 81 N.C. App. 295, 298–99, 344 S.E.2d 117, 119–20 (1986) (fraud in the inducement). The plaintiff must show that any reliance on the false representations was reasonable. Forbis v. Neal, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007); Hudson-Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999); Rosenthal v. Perkins, 42 N.C. App. 449, 452, 257 S.E.2d 63, 66 (1979).

Rogerson asserts two bases for his claim of fraud. First, Rogerson alleges that in Addendum B, in the Property Report, and orally, Duplin Land falsely represented that it would refund all monies that Rogerson paid in the event that notice was not provided by November 1, 2007, and that Duplin Land never intended to honor these promises. Compl. ¶¶ 67, 68. Second, Rogerson alleges that Duplin Land and its agents represented that an independent environmental consultant would undertake all sampling and monitoring activities of fecal coliform levels, but that Duplin Land never intended to honor this promise. Id.

As to the first basis for fraud, Duplin Land responds that Rogerson has failed to show any false representation made with intent to deceive Rogerson. Def.'s Mem. Supp. Mot. Summ. J. 17–18. Specifically, Duplin Land argues that the evidence shows that when Duplin Land made the promise to refund money pursuant to Addendum B, Duplin Land intended to honor the promise, and

8

there is no evidence to the contrary. Id.

The court agrees with Duplin Land. "[A] mere promissory representation will not be sufficient to support an action for fraud [unless] . . . it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980), abrogated on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 569, 374 S.E.2d 385, 392 (1988). Before the parties entered the contract on April 5, 2007, Duplin Land made the promises in Addendum B concerning an acceptable written report. See Compl. ¶ 27; Hine Aff. ¶¶ 14–15; [D.E. 18] 66. As mentioned, after April 5, 2007, the Clark Group continued monitoring activities through May 2007. Duplin Land then undertook sampling in August 2007, and the Clark Group provided a report to DWQ in October 2007. DWQ reviewed the matter and advised Duplin Land in October 2007 that it considered the issue of contamination closed. Duplin Land then mailed Rogerson notice about the Confirmatory Report before November 1, 2007, but Rogerson never received the letter. Moreover, Rogerson did not request a refund until September 5, 2008, over ten months after Rogerson failed to receive timely notice from Duplin Land. Kevin A. Hine, Duplin Land's Executive Vice President and General Manager, stated that he did not respond to Rogerson's September 2008 and October 2008 demands for a refund because so much time had passed that he did not believe that the requests were serious or that a refund was owed. See Hine Aff. ¶¶ 1, 23–25. Even viewing the evidence in the light most favorable to Rogerson, the evidence shows that Duplin Land intended to and attempted to perform the obligations set out in Addendum B, that no intent to deny a refund arose until September 2008, and that the denial of a refund was based upon a belief that no refund was due. Rogerson's conclusory allegation that Duplin Land never intended to honor the promise set out in Addendum B does not create a genuine issue of material fact. "Rule 56[] . .

9

. requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (quotations omitted). Rogerson has failed to meet this burden.

As to the second basis for fraud—that Duplin Land promised that an independent consultant would undertake all sampling and monitoring activity—Rogerson must show that when Duplin Land or its agents made this representation on April 5, 2007, Duplin Land did not intend to honor the promise. See Johnson, 300 N.C. at 255, 266 S.E.2d at 616. Duplin Land asserts that Rogerson failed to present evidence that Duplin Land made this promise without the intent to perform. Def.'s Mem. Supp. Mot. Summ. J. 18–19. Rogerson responds that "after May 2007, and before [the Lot Purchase] Contract was executed, independent sampling had ceased." Pl.'s Mem. Opp. Mot. Summ. J. 11. Although independent sampling activity ended in May 2007, Rogerson misstates the timing of the execution of the Lot Purchase Contract. Rogerson signed the contract on April 5, 2007. Compl. ¶ 27; [D.E. 18] 66. Furthermore, although the Clark Group did not collect any samples after May 2007, the Clark Group monitored the results of the sampling done thereafter and created the report submitted to DWQ on October 15, 2007. Clark Aff. ¶¶ 8–9. In light of the continued work of the Clark Group through May 2007, and its continued oversight through October 2007, no evidence suggests that Duplin Land did not intend to use the Clark Group to monitor fecal coliform levels when the contract was signed on April 5, 2007. See Sanderford, 2012 WL 506667, at *4. Rather, the evidence shows that the promissory representations regarding the refund provision and independent sampling activity were true when they were made, and that these representations were not made with intent to deceive. Accordingly, there is no genuine issue of material fact, and Duplin Land is awarded summary judgment on the fraud claim.

10

C.

The court next considers Rogerson's claim that Duplin Land violated the UDTPA. In order to establish a UDTPA violation, Rogerson must prove (1) that the defendant committed an unfair or deceptive act or practice, (2) that the act or practice was in or affecting commerce, and (3) that the act proximately caused injury to the plaintiff. See N.C. Gen. Stat. §§ 75-1.1, 75-16; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Mere breach of contract is not an unfair or deceptive practice under the UDTPA. See Ellis v. La.-Pac. Corp., 699 F.3d 778, 787–88 (4th Cir. 2012); PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998); Carcano v. JBSS, LLC, 200 N.C. App. 162, 171, 684 S.E.2d 41, 49–50 (2009). In contrast, fraud "necessarily constitutes a violation of the prohibition against unfair or deceptive trade practices." Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 470, 343 S.E.2d 174, 180 (1986); see Ellis v. N. Star Co., 326 N.C. 219, 225–26, 388 S.E.2d 127, 131 (1990). Duplin Land asserts that Rogerson has failed to show evidence of an unfair or deceptive act. Def.'s Mem. Supp. Mot. Summ. J. 20–21. Rogerson responds that, "[t]o the extent [he] establishes his claim for fraud," he has shown a UDTPA violation. Pl.'s Mem. Opp. Mot. Summ. J. 12.

Rogerson does not assert any unfair or deceptive act beyond his fraud claim. Id. Because Rogerson's fraud claim fails, his UDTPA claim also fails. Accordingly, Duplin Land is awarded summary judgment on the UDTPA claim.

D.

Next, the court considers Rogerson's claims under the ILSFDA. Section 1703(a)(2) makes unlawful, in connection with the sale of a non-exempt lot:

(A) to employ any device, scheme, or artifice to defraud;

11

> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision; [or]
>
> (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser[.]

15 U.S.C. § 1703(a)(2). Rogerson asserts that Duplin Land (1) failed to disclose that Duplin Land would oversee further environmental testing; (2) misrepresented that further environmental testing would be performed by an independent consultant; and (3) used the refund provisions of Addendum B to entice Rogerson to buy Lot 61B while never intending to honor those provisions. See Compl. ¶ 51. Duplin Land responds that the statute of limitations, 15 U.S.C. § 1711, bars these claims and that the claims also lack merit. Def.'s Mem. Supp. Mot. Summ. J. 21–26. Rogerson replies that the claims are not time-barred under section 1711(a)(2) and that there is a genuine issue of material fact as to the claims under section 1703(a)(2).

The court declines to address the argument concerning the statute of limitations, and instead analyzes the merits. As in his fraud claim, Rogerson asserts that Duplin Land (1) failed to disclose that Duplin Land would oversee further environmental testing; (2) misrepresented that further environmental testing would be performed by an independent consultant; and (3) used the refund provisions of Addendum B to entice Rogerson to buy Lot 61B while never intending to honor those provisions. As Duplin Land notes, however, although an employee of a Duplin Land-related company took water samples, no evidence suggests that Duplin Land oversaw the environmental testing. Instead, the undisputed evidence shows that the Clark Group analyzed the results of all environmental testing and produced the report submitted to DWQ. See Clark Aff. ¶¶ 8–9. Duplin Land was not required to disclose that it would oversee environmental testing because the evidence

12

shows that such a disclosure would have been untrue when Rogerson purchased Lot 61B. Similarly, the Clark Group analyzed the results of all environmental samples, including those that the Murphy Family Ventures employee took, and the Clark Group continued to take samples after Rogerson signed the Lot Purchase Contract. Id. Thus, no evidence suggests that, when the contract was signed on April 5, 2007, Duplin Land did not intend to continue using the Clark Group to perform sampling. Thus, Duplin Land did not misrepresent that further environmental testing would be performed by an independent consultant. Finally, as discussed regarding the fraud claim, the evidence demonstrates that, when the parties executed the contract on April 5, 2007, Duplin Land intended to and thereafter attempted to comply with the terms of Addendum B. Rogerson has presented no evidence to the contrary. Because there are no genuine issues of material fact on the ILSFDA claim, Duplin Land is awarded summary judgment on the ILSFDA claim.

III.

In sum, Rogerson has failed to show the existence of a genuine issue of material fact with respect to any claim, and therefore the court GRANTS Duplin Land's motion for summary judgment [D.E. 14]. The clerk shall close the case.

SO ORDERED. This 5 day of March 2013.

JAMES C. DEVER III
Chief United States District Judge